**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: _____**

BEEFREE, LLC,
a Florida Limited Liability Company,

      Plaintiff,

v.

UNICOIN INC., a Delaware Corporation,
and SILVINA MOSCHINI, an individual,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, BEEFREE, LLC ("BEEFREE"), by and through its undersigned counsel, hereby sues Defendants, UNICOIN INC. ("UNICOIN"), and SILVINA MOSCHINI ("MOSCHINI") (collectively, "Defendants"), and alleges as follows:

### **PARTIES, JURISDICTION AND VENUE**

1.      This is an action for damages in excess of $75,000.00, excluding interest, costs and attorneys' fees and is otherwise within the jurisdiction of this Court.

2.      Plaintiff, BEEFREE, is and at all times material hereto was a Florida Limited Liability Company conducting business and having its principal place of business in Miami-Dade County, Florida.

3.      Defendant, UNICOIN, is and at all times material hereto was a Delaware Corporation conducting business and having its principal place of business in Wilmington, Delaware, and is otherwise *sui juris*.

4.      Defendant, MOSCHINI, is an individual residing in Miami-Dade County, Florida, and is otherwise *sui juris*.

5.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a) because this

1

Complaint seeks damages for Plaintiff well in excess of $75,000 exclusive of interest and attorneys' fees, which arise under several of the causes of action herein. Additionally, there is diversity among the Parties meeting the requirements of §1332(a).

6.    This Court also has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, because several of Plaintiff's claims arise under federal law.

7.    Venue is proper in this Court because some or all of the contract at issue was entered into, and the injuries resulting from UNICOIN's breach of contract and other conduct complained of herein occurred, in Miami-Dade County, Florida. Moreover, some or all of the services provided under the contract at issue were provided in Miami-Dade County, Florida.

8.    Defendants purposefully availed themselves of the forum designated in the contract at issue as the United States District Court for the Southern District of Florida. Moreover, it was reasonably foreseeable that they would be haled before this Court.

9.    All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

10.    Plaintiff, BEEFREE, has retained the undersigned counsel and is obligated to pay attorneys' fees arising from this action. BEEFREE asks this Court to award such fees, in addition to costs and other expenses as are available under the terms of the contract at issue and Florida law.

## FACTUAL AND PROCEDURAL BACKGROUND

11.    BEEFREE is involved in the business of, *inter alia*, providing various creative advertising and marketing services and deliverables for its clients.

12.    As part of said advertising and marketing services, BEEFREE owns and operates a fleet of over 100 electric vehicles, known as "Freebees", that provide transportation to members of the public, and upon and within which clients of BEEFREE can purchase advertising space.

13.    BEEFREE also provides its clients with in-house design and production of advertising materials that are placed upon and within the vehicles.

14.    BEEFREE has provided its transportation and advertising services throughout South Florida communities since 2012, partnering with numerous municipalities and national brands, and developing a sterling reputation and significant following of users and supporters who view its Freebee brand as a trusted provider of services.

15.    UNICOIN is a for-profit corporation that purports to be involved in, *inter alia*, the launch and sale of a new cryptocurrency, advertising itself as "a next-generation crypto designed for profitability and stability."

16.    According to UNICOIN's website and promotional materials, and at all times material to this case, MOSCHINI was a "Founder and Chair" of UNICOIN.

17.    In September of 2023, Defendants and BEEFREE engaged in discussions about conducting an advertising and marketing campaign for UNICOIN's forthcoming cryptocurrency utilizing BEEFREE's services and vehicles.

18.    During these discussions, Defendants proposed to compensate BEEFREE with units of its forthcoming cryptocurrency, known as "Unicoins", in lieu of cash.

19.    BEEFREE initially expressed reluctance to accept payment in Unicoins rather than cash, expressing specific concerns to Defendants, including that for BEEFREE to accept payment in Unicoins, BEEFREE would need to have the ability to promptly convert at least a portion of the Unicoins it received into United States Dollars.

20.     In response to BEEFREE's stated concerns, Defendants made numerous fraudulent and material misrepresentations and omissions regarding Unicoins, to induce BEEFREE into accepting payment in the cryptocurrency.

21.     In order to induce BEEFREE to enter into an agreement to provide valuable services and deliverables to UNICOIN in exchange for payment in Unicoins, MOSCHINI represented to BEEFREE, *inter alia*, that UNICOIN would be conducting an Initial Coin Offering ("ICO") in late-October or early-November of 2023, at which time, she assured BEEFREE, it could immediately sell the Unicoins paid to it on the open market in exchange for United States Dollars.[1]

22.     On or about October 7, 2023, BEEFREE entered into a written contract with UNICOIN for BEEFREE to provide full vehicle advertising for UNICOIN on twenty-seven (27) of BEEFREE's vehicles, for a period of three (3) months, in exchange for $364,500.00 worth of Unicoins, plus an additional $20,250.00 worth of Unicoins for production costs, using a conversion rate of market value at the time of payment, or 50 cents per Unicoin token prior to exchange launch.[2]

23.     MOSCHINI signed the Written Contract on behalf of UNICOIN, providing as her title "President".

24.     Pursuant to the Written Contract, UNICOIN agreed to pay BEEFREE $20,250.00 worth of Unicoins for production costs on or before October 9, 2023, and agreed to pay the $364,500.00 worth of Unicoins to BEEFREE in monthly installments on or before the first calendar day of each month of the 3-month term during which the services were to be provided.

25.     BEEFREE faithfully performed its obligations under the Written Contract, producing and advertising materials and installing full-vehicle advertisements promoting Unicoin on twenty-

---

[1] *See* WhatsApp Messages between Moschini and Beefree CEO Jason Spiegel attached hereto as composite **Exhibit A**.
[2] *See* Master Services Agreement and Rates and Services Addendum (the "Written Contract") attached hereto as composite **Exhibit B**.

seven (27) of its vehicles, and otherwise fulfilled all its obligations under the Written Contract in good faith for the duration of the contract term.

26.     At all times material hereto, BEEFREE performed its obligations and provided the services and deliverables to UNICOIN in the manner specified in the Written Contract.

27.     The services and deliverables provided to UNICOIN by BEEFREE resulted in significant public exposure, name recognition, and goodwill for the benefit of UNICOIN, its brand, and its Unicoins cryptocurrency, which was still actively soliciting and accepting public investment at the time of the advertising campaign.

28.     Unfortunately, despite receiving these benefits as well as the services and deliverables from BEEFREE, UNICOIN has failed to make any payment to BEEFREE whatsoever as of the filing of this Complaint.

29.     Despite Defendants' representations that BEEFREE would be paid in Unicoins beginning on October 9, 2023, and that the Unicoins would be freely exchangeable for United States Dollars in late-October or early-November of 2023, UNICOIN has failed to conduct any ICO and has not released any Unicoins that are available for exchange or trade as of the filing of this Complaint.

30.     Moreover, *after* receiving a significant portion of the benefits of BEEFREE's services and deliverables, UNICOIN informed BEEFREE *for the first time* of material restrictions relating to its ability to pay BEEFREE in Unicoins that Defendants entirely omitted when inducing BEEFREE to enter into the Written Contract and to provide UNICOIN with the benefit of BEEFREE's services and deliverables.

31.     Significantly, after inducing BEEFREE to enter into the Written Contract and to expend significant resources providing the services and deliverables for UNICOIN's benefit, UNICOIN informed BEEFREE that BEEFREE needed to qualify as an "accredited investor" under United

States securities laws in order to receive payment in Unicoins, and that any Unicoins paid to BEEFREE would be subject to a 6-month "lock-up" period after receiving Unicoins, during which BEEFREE would be unable to exchange or otherwise dispose of its Unicoins for United States Dollars.

32.     None of the above restrictions were included in the Written Contract or disclosed to BEEFREE by Defendants during the Parties discussions prior to execution of the Written Contract. To the contrary, MOSCHINI at all times represented that payment and liquidity of Unicoins to BEEFREE would be timely and unrestricted.

33.     After several weeks of waiting to receive payment from UNICOIN, a representative of BEEFREE spoke with Richard Devlin, UNICOIN's SVP and General Counsel, via telephone to discuss the accredited investor restrictions. It was at that time that Devlin advised BEEFREE for the first time that any Unicoins paid to BEEFREE would be subject to a minimum 6-month hold, or "lock-up", from the time of issue once an ICO took place.

34.     On that phone call, Devlin also conveyed the idea of making the payment to BEEFREE in cash rather than Unicoins, due to the restrictions that were impeding payment to BEEFREE. Devlin stated that he would speak with UNICOIN's management team to discuss next steps and would circle back with a solution to ensure BEEFREE was justly compensated. Based on Devlin's representations, BEEFREE continued providing services and deliverables to UNICOIN as agreed. Unfortunately, however, no reasonable solution was ever proposed thereafter.

35.     As of the filing of this Complaint, and despite numerous demands, BEEFREE has received no payment from UNICOIN in cryptocurrency or otherwise, despite forgoing numerous other business opportunities in favor of providing twenty-seven (27) vehicles exclusively dedicated to advertising and marketing of UNICOIN during the three-month Term, and despite expending

significant efforts and out-of-pocket monies on production, installation, and execution of UNICOIN's advertising and marketing campaign.

36.      As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, breach of the Parties' agreements, and other tortious acts and violations of law, BEEFREE has been damaged and continues to suffer damages.

## COUNT I – BREACH OF CONTRACT
### (Against UNICOIN)

37.      BEEFREE repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1-36 of this Complaint, as if fully set forth herein.

38.      On or about October 5, 2023, BEEFREE and UNICOIN entered into a valid and enforceable contract, supported by the written representations made to BEEFREE by UNICOIN President, MOSCHINI. *See* **Exhibits A & B**.

39.      BEEFREE provided advertising and marketing services for the benefit of UNICOIN in good faith and pursuant to the terms of the contract.

40.      UNICOIN's failure to pay BEEFREE in accordance with the terms of the contract constitutes a breach of the contract.

41.      As a direct and proximate result of UNICOIN's breach of the contract, BEEFREE has suffered, and continues to suffer, damages.

42.      UNICOIN's breach of the Parties' contract resulted in at least **$384,750.00** in damages to BEEFREE, for which UNICOIN is liable.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against UNICOIN)

43.      BEEFREE repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1-36 of this Complaint, as if fully set forth herein.

44.     Florida law imposes a duty of good faith and fair dealing in a business relationship and in performing contractual duties.

45.     The Agreement contained an implied covenant of good faith and fair dealing, pursuant to which UNICOIN had a duty deal in good faith and fairly with BEEFREE, and to avoid any act that would deprive BEEFREE of the benefits of the Agreement.

46.     UNICOIN breached this duty by making material misrepresentations and omissions to BEEFREE regarding the nature of the payment that was to be made to BEEFREE in exchange for the services and deliverables provided to UNICOIN.

47.     BEEFREE performed all of the terms and conditions required of BEEFREE under the terms of the contract between BEEFREE and UNICOIN, and UNICOIN's performance has not been excused.

48.     As a direct and proximate result of UNICOIN's breach of the implied covenant of good faith and fair dealing, BEEFREE has suffered damages for which UNICOIN is liable.

## COUNT III – OPEN ACCOUNT
### (Against UNICOIN)

49.     BEEFREE repeats, re-alleges and incorporates by reference paragraphs 1-36 as if fully set forth herein.

50.     Unicoin currently owes BEEFREE **$384,750.00**, which has been past due with interest since at least December 1, 2023.

51.     Beefree has performed all services and delivered all goods necessary for payment of the outstanding amounts owed.

52.     Despite the performance of these services and the delivery of goods, UNICOIN has failed to pay any portion of the past due and owing amount to BEEFREE.

53.     As a result of UNICOIN's failure to pay BEEFREE, BEEFREE has been damaged, and is

entitled to payment of all amounts due and owing, with interest.

## COUNT IV – FRAUD IN THE INDUCEMENT
### (Against UNICOIN and MOSCHINI)

54.     BEEFREE repeats, re-alleges and incorporates by reference paragraphs 1-36 as if fully set forth herein.

55.     In order to induce BEEFREE to enter into a contract and provide services and deliverables thereunder for the benefit of the Defendants, Defendants made numerous material misrepresentations and omissions to BEEFREE regarding the nature of the payment that was to be made to BEEFREE in exchange for the services and deliverables provided to UNICOIN.

56.     If not for the material misrepresentations and omissions made by Defendants, BEEFREE would not have entered into an agreement with UNICOIN to provide the services and deliverables in exchange for payment in Unicoins and would not have provided the services and deliverables that it provided to UNICOIN.

57.     The material misrepresentations and omissions made by Defendants were made knowingly or with reckless disregard for the truth.

58.     As a direct and proximate result of BEEFREE's reliance on Defendants' misrepresentations, BEEFREE has suffered damages, for which Defendants are liable.

## COUNT V - UNJUST ENRICHMENT
### (Against UNICOIN)

59.     BEEFREE repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1-36 of this Complaint, as if fully set forth herein.

60.     General equitable principle that no person should be allowed to profit at another's expense without making restitution for reasonable value of any property, services, or other benefits that have been unfairly received and retained.

61.     UNICOIN, by and through its agents, made material misrepresentations and omissions regarding payment to BEEFREE.

62.     UNICOIN was unjustly enriched by wrongfully accepting and benefiting from the services and deliverables provided by BEEFREE, including services and deliverables with a fair market value of at least $384,750.00, in addition to increase in name/brand recognition, goodwill, and profits for UNICOIN as a result of the services and deliverables, when UNICOIN knew that it could not compensate BEEFREE as agreed.

63.     It would be wrong and inequitable to permit UNICOIN to retain these benefits that they unfairly and wrongfully obtained at BEEFREE's expense.

64.     As a direct and proximate result of the unjust enrichment, BEEFREE has suffered and continues to suffer damages.

65.     UNICOIN is liable and should immediately provide monetary restitution to BEEFREE in the amount of the value of the services and deliverables provided, and in excess of such amount for interest and damages directly attributable to its deliberate bad faith acts, under the theory of unjust enrichment.

<u>**COUNT VI – FRAUD IN THE OFFER OF SECURITIES**</u>
**Violations of Section 17(a) of The Securities Act**
**(Against UNICOIN and MOSCHINI)**

66.     BEEFREE repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1-36 of this Complaint, as if fully set forth herein.

67.     On numerous occasions, while offering Unicoins to BEEFREE in exchange for valuable services and deliverables, including Defendants engaged in the violation of Section 17(a) of the Securities Exchange Act. Private relief is allowed.

68.     Defendants made numerous statements, misrepresentations, and material omissions in inducing BEEFREE to enter an agreement to provide services and deliverables, including property, to UNICOIN in exchange for Unicoins, a security subject to the Securities Act.

69.     Section 17(a) of the Securities Act makes it unlawful to "employ any device, scheme, or artifice to defraud", "obtain money or property" by using material misstatements or omissions, or to "engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

70.     Defendants, by engaging in the conduct described above: (a) directly or indirectly, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, with scienter, employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

71.     The material misrepresentations and omissions that the Defendants made included:

    a.   Complete failure to disclose the requirement that BEEFREE needed to be an "accredited investor" to receive payment in Unicoins prior to entering the contract with BEEFREE and receiving services and deliverables from BEEFREE.

    b.   Complete failure to disclose that Unicoins were subject to a 6-month "lock-up" period during which BEEFREE would be unable to exchange or otherwise dispose of Unicoins after receipt.

11

    c.   Assuring BEEFREE that Unicoins were going to be released to investors and would immediately exchangeable no later than "early-November" of 2023.

    d.   Assuring BEEFREE that it would receive a portion of the Unicoins to which it was entitled as payment beginning October 9, 2023, and on the first of each month of each month of the term thereafter.

72.    Each of these material misrepresentations and/or omissions was highly unreasonable and constituted an extreme departure from the standards of ordinary care and presented a danger of misleading purchasers which was either known to each Defendant or so obvious that each Defendant must have been aware of it.

73.    By engaging in the conduct described above, Defendants violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

74.    BEEFREE justifiably and reasonably relied on the misrepresentations and omissions of the Defendants.

75.    As a direct and proximate result of the foregoing, BEEFREE agreed to provide services and deliverables of significant value in exchange for Unicoins, which it otherwise would not have done.

76.    By reason of the conduct alleged herein, Defendants are liable for the aforesaid wrongful conduct, and BEEFREE is entitled to relief under the private causes of action for Defendants' violation of securities laws causing substantial damages to BEEFREE.

### COUNT VII – FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
**Violations of Section 10(b) of The Securities Exchange Act
(Against UNICOIN and MOSCHINI)**

77.    BEEFREE repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1-36 of this Complaint, as if fully set forth herein.

78.     On numerous occasions, while soliciting services and deliverables from BEEFREE, Defendants engaged in the violation of Section 10(b) of the Securities Exchange Act. Private relief is allowed.

79.     Defendants made numerous statements, misrepresentations, and material omissions in connection with the solicitation of BEEFREE's services and deliverables in exchange for Unicoins, a security subject to the Securities Exchange Act.

80.     Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

81.     By engaging in the conduct described above, Defendants, in concert, engaged in a plan, scheme and course of conduct, pursuant to which they knowingly, or with deliberate and severe recklessness, engaged in acts, transactions, practices, and courses of business which operated as a fraud upon BEEFREE and made various untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to BEEFREE as set forth above. The purpose of this scheme was to induce BEEFREE to provide approximately $400,000.00 worth of services and deliverables related to the marketing and advertising of UNICOIN and its cryptocurrency for the benefit of the Defendants.

82.    The material misrepresentations and omissions that the Defendants made included:

     a.    Complete failure to disclose the requirement that BEEFREE needed to be an "accredited investor" to receive payment in Unicoins prior to entering the contract with BEEFREE and receiving services and deliverables from BEEFREE.

     b.    Complete failure to disclose that Unicoins were subject to a 6-month "lock-up" period during which BEEFREE would be unable to exchange or otherwise dispose of Unicoins after receipt.

     c.    Assuring BEEFREE that Unicoins were going to be released to investors and would immediately exchangeable no later than "early-November" of 2023.

     d.    Assuring BEEFREE that it would receive a portion of the Unicoins to which it was entitled as payment beginning October 9, 2023, and on the first of each month of each month of the term thereafter.

83.    Each of these material misrepresentations and/or omissions was highly unreasonable and constituted an extreme departure from the standards of ordinary care and presented a danger of misleading purchasers which was either known to each Defendant or so obvious that each Defendant must have been aware of it.

84.    By engaging in the conduct described above, each of Defendants violated each of, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.1 0b-5.

85.    BEEFREE justifiably and reasonably relied on the material misrepresentations and omissions made by the Defendants.

86.     As a direct and proximate result of the foregoing, BEEFREE agreed to provide services and deliverables in exchange for Unicoins, which it otherwise would not have done.

87.     By reason of the conduct alleged herein, Defendants are liable for the aforesaid wrongful conduct, and BEEFREE is entitled to relief under the private causes of action for Defendants' violation of securities laws causing substantial damages to BEEFREE.

**COUNT VIII – VIOLATION OF FLORIDA SECURITIES**
**AND INVESTOR PROTECTION ACT, FLA. STAT. § 517.301(1)(a)**
**(Against UNICOIN and MOSCHINI)**

88.     BEEFREE repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1-36 of this Complaint, as if fully set forth herein.

89.     Defendants solicited valuable services and deliverables from BEEFREE for the sale of securities, specifically, units of its Unicoins cryptocurrency, a security.

90.     "Sale" or "sell" means any contract of sale or disposition of any investment, security, or interest in a security, for value.

91.     In order to induce Plaintiff to provide Defendants with valuable services and deliverables in exchange for Unicoins, Defendants made material misrepresentations and omissions to BEEFREE regarding the ability for BEEFREE to receive and exchange Unicoins in accordance with a prompt payment schedule, as set forth more fully above.

92.     Defendants, personally and in concert, engaged in a plan, scheme and course of conduct, pursuant to which they knowingly, recklessly and/or negligently engaged in acts, transactions, practices, and courses of business which operated as a fraud upon BEEFREE and made various untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading,

as set forth above. The purpose and effect of this scheme was to induce BEEFREE to provide valuable services and deliverables to UNICOIN in exchange for Unicoins.

93.     By reason of the foregoing, Defendants have violated the Florida Securities and Investor Protection Act and are liable for the aforesaid wrongful conduct and are liable to BEEFREE for the injuries it suffered in connection therewith.

<b><u>REQUEST FOR RELIEF</u></b>

Plaintiff, BEEFREE, LLC, respectfully requests that relief be granted in favor of Plaintiff and against the Defendants, UNICOIN INC. and SILVINA MOSCHINI, and ordered as follows:

1.   Compensatory, general, special, and consequential damages in an amount to be proven, including interest, costs and attorneys' fees;

2.   Common law relief and statutory relief under Florida and Federal law;

3.   Punitive damages to punish the Defendants and deter such future conduct.

4.   Attorneys' fees, court costs, and interest; and

5.   Such other and further relief as this Court may deem equitable and just.

Dated this <u>21st</u> day of June, 2024.


Respectfully submitted,

*s/Bradley F. Zappala*
Bradley F. Zappala, Esq.
Florida Bar No.: 111829
bzappala@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami Beach, Florida 33139
Tel: (305) 534-4757
Fax: (305) 538-5504
*Counsel for Plaintiff, Beefree, LLC*

Exhibit "A"



3:50

Silvina

Tue, Sep 26

Hi Silvina! Thanks for jumping on a call with a Seth and myself today. We are really excited to get this off the ground.
6:37 PM

As I start to work approvals with the different municipalities I totally forgot to ask you payment terms. We do a revenue share with each city on the advertising and need to provide them with 50% of revenue generated. Understanding that payment to us will be in Unicoin, will I be able to convert those to cash when you launch the ICO? I know municipalities won't accept payment from us in crypto loll
6:39 PM

Hi Jason, it was great catching up and meeting Seth.
6:41 PM

Yes, once we ICO they can convert in fiat, other crypto , USD of keep it and watch it growth. We plan to do the first ICO with INX late Oct/ early Nov and release coins in several exchanges progressively- most likely till Feb.
6:44 PM

We can do payments in campaign batches
6:44 PM

But to make it better for you, I can lock pre ICO price
6:44 PM



3:51   .ill 🛜 88⁺

‹ 4   Silvina   📹   📞

advertising and need to provide them
with 50% of revenue generated.
Understanding that payment to us will
be in Unicoin, will I be able to convert
those to cash when you launch the ICO?
I know municipalities won't accept
payment from us in crypto loll   6:39 PM ✓✓

Hi Jason, it was great catching up and
meeting Seth.   6:41 PM

Yes, once we ICO they can convert in
fiat, other crypto , USD of keep it and
watch it growth. We plan to do the first
ICO with INX late Oct/ early Nov and
release coins in several exchanges
progressively- most likely till Feb.
6:44 PM

We can do payments in campaign
batches   6:44 PM

But to make it better for you, I can lock
pre ICO price   6:44 PM

Ok perfect, we def are looking to hold a
bunch but will also need to convert half
of them to cash to distribute payments
to the municipalities.   6:49 PM ✓✓

You will have enough :)   7:16 PM

Will make sure you are happy   7:16 PM   ⌄

Thank you Silvina!   8:22 PM ✓✓

+   🖉   ◎   🎤

# MASTER SERVICES AGREEMENT

This Master Services Agreement ("Agreement") is made and entered into on October 5th, 2023 by and between BEEFREE, LLC ("BEEFREE") and Unicoins, Inc. ("CLIENT"). This Agreement provides the general terms and conditions applicable to CLIENT's purchase of services from BEEFREE.

In consideration of the promises and covenants contained in this Agreement, and for good and valuable consideration, BEEFREE and CLIENT (collectively, the "Parties"), intending to be legally bound, hereby agree as follows:

**1. Scope of Services.** This Agreement shall serve as a master agreement between the Parties, which sets forth the basic terms that shall apply to the respective rights and obligations of the Parties during the term of this Agreement. Specific services and rates for such services shall be set forth in a separate Rates and Services Addendum ("Addendum" or "Addendums"), which may be agreed to from time to time between the Parties, and which shall require execution by each party hereto in order to be effective and binding. Each Addendum shall reference this Agreement and shall be governed by the terms and conditions herein. In the event of a conflict between any Addendum and this Agreement, the terms and conditions of this Agreement shall control, unless the Addendum expressly states that the terms and conditions of the Addendum shall control. Specific terms in an Addendum shall not affect any other Addendum under this Agreement without the express written agreement of the Parties.

**2. Description of Services.** BEEFREE provides advertising and public relations services to clients by means of promoting clients' products and businesses through various individualized marketing strategies, including mobile advertising via its fleet of eco-friendly electric vehicles. Clients can choose to purchase advertising space on the interior or exterior of BEEFREE's vehicles, as well as "airtime" on LCD monitors within BEEFREE's vehicles. In addition, BEEFREE offers an array of related services focused on meeting the advertising and marketing needs of its clients.

**3. Compensation and Payment.** The rates for services will be based on the type and number of services requested by CLIENT, and will be specified in the Addendum. Unless otherwise stated in the Addendum, CLIENT shall make payment to BEEFREE on a monthly basis, on or before the first calendar day of each month. Any payments not received within seven (7) calendar days of the payment due date shall bear interest at the maximum statutory rate until paid. BEEFREE will electronically invoice CLIENT fourteen (14) days prior to payment due date, however the failure to or delay of invoicing shall not excuse CLIENT from timely payment requirements, and shall not act as a waiver of the imposition of any interest accrued for late payment. Any and all disputes related to an invoice issued by BEEFREE must be made within ten (10) calendar days of the payment due date for the invoice. Failure to dispute an invoice within such period shall serve as a complete, final, and total waiver of any dispute as to the performance of services on the part of BEEFREE for the prior billing cycle.

**4. Term and Period of Performance.** This Agreement shall commence immediately upon execution of the first Addendum hereto, and, unless terminated earlier pursuant to Section 5 below or by mutual written agreement between the Parties, shall continue in full force and effect thereafter until satisfactory completion of the services provided for in this Agreement and all Addendums hereto is achieved.

**5. Termination.** This Agreement, along with any Addendums, may be unilaterally terminated in any of the following manners:

(a) Termination for Cause: If either party believes that the other party has failed in any material respect to perform its obligations under this Agreement or its Addendums, then that party may provide notice to the other party describing the alleged failure in reasonable detail. If the alleged failure relates to a failure to pay any sum due and owing under this Agreement, the breaching party shall have fifteen (15) business days after notice of such failure to cure the breach. If the breaching party fails to cure within the specified time, then the non-breaching party may immediately terminate this Agreement for cause by providing notice to the breaching party. With respect to all other defaults, if the breaching party does not, within thirty (30) calendar days after receiving such written notice, either: (a) cure the material failure, or (b) if the breach is not one that can reasonably be cured within thirty (30) calendar days, then the non-breaching party may terminate this Agreement, in whole or in part, for cause by providing notice to the breaching party.

(b) Termination for Bankruptcy: Either party shall have the immediate right to terminate this Agreement, by providing written notice to the other party, in the event: (i) the other party enters into receivership or is the subject of a voluntary or involuntary

bankruptcy proceeding, or makes an assignment for the benefit of creditors; or (ii) a substantial part of the other party's property becomes subject to any levy, seizure, assignment or sale for or by any creditor or government agency.

(c) Payments Due: The termination of this Agreement shall not release either party from its obligation to make payment of any and all amounts then or thereafter due or payable.

(d) Continuation of Services: BEEFREE will continue to perform Services during the notice period unless otherwise mutually agreed upon between the Parties in writing. In the event that CLIENT provides notice of termination and directs BEEFREE not to perform the services during the notice period, CLIENT agrees to pay BEEFREE an amount equal to the amount normally due to BEEFREE for the notice period. Upon termination by either party, CLIENT will pay BEEFREE for all services performed and charges and expenses reasonably incurred by BEEFREE in connection with the services provided under this Agreement and any Addendums through the date of termination.

**6. Notice.** Any and all notices provided for in this Agreement shall be sent electronically in writing to the following contact persons for each party:

**CLIENT:**

Attn: Lucas Mariani

Address: 300 Delaware Ave. Suite 210, Wilmington, DE, US 19801

Tel: +54 911 3598-9861

Fax/email: l.mariani@unicoin.com

**BEEFREE:**

Attn: Seth Brown
Address: 371 NE 61st St, Miami, FL 33137
Tel: 954-798-2250
Fax/email: Seth@ridefreebee.com

Each party agrees to appoint responsible contact persons in order to ensure that the relevant contractual obligations are timely performed in accordance with this Agreement. Such contact persons may be changed by the Parties by sending notice thereof to the other party.

**7. Advertising Materials and Content.** CLIENT shall be responsible for advertising content provided for use in performing the services hereunder, and agrees to indemnify and hold harmless BEEFREE from any and all claims, suits, actions, demands, or liabilities of any kind related to the content of the advertisements it places with BEEFREE. BEEFREE will install CLIENT advertisements as needed, however, all costs associated with the creation and application of such advertisements shall be the sole responsibility of CLIENT, and BEEFREE will bear no liability for the costs associated therewith. CLIENT shall retain all rights in their advertisements, marks and symbols, however, BEEFREE shall not be required to return any advertising materials, recordings, renderings, coupons, handbills, cards or other goods provided to BEEFREE for the purpose of promoting CLIENT, unless otherwise agreed between the Parties in writing.

**8. Force Majeure.** BEEFREE shall not be liable to the CLIENT for non-performance or delay in performance of any of its obligations under this Agreement and any Addendum(s) hereto due to acts of God, war, civil commotion, embargo, strikes, fire, theft, delay in delivery of services of sub-contractors or sub-suppliers, shortage of labor or materials, compliance with any regulation or directive of any national, state or local government, or any department or agency thereof, epidemic, hurricane, tropical storm, inclement weather, earthquake or any other similar unforeseen event or act of God (whether or not similar in nature to those specified) which are outside the reasonable control of BEEFREE.

**9. Governing Law.** This Agreement shall be construed, interpreted and governed exclusively by and pursuant to the laws of the State of Florida, without reference to any conflicts-of-laws rules or principles that may or would require the application of the law of any other jurisdiction.

**10. Venue.** The Parties agree that any controversy, disagreement, claim, dispute or other proceeding between them which relates to or arises out of this Agreement, or which is otherwise related in any manner to the relationship between the Parties, shall be subject to the exclusive jurisdiction and venue of the United States District Court for the Southern District of Florida located in Miami-Dade County, Florida, or, in the event that such Federal Court does not have subject matter jurisdiction over such proceeding, in the courts of the State of Florida located in Miami-Dade County, Florida. Each party irrevocably waives any right that it may have to a trial by jury in connection with any dispute arising out of or in connection with this Agreement and any Addendums hereto.

**11. Default.** In the event of any lawsuit, litigation, proceeding or action (collectively, "Action") necessitated by a party's default with respect to its obligations under this Agreement, the prevailing party shall be reimbursed by the other party for all costs and expenses incurred in connection with the Action, including, but not limited to, reasonable attorneys' fees at any hearing or trial and on appeal.

**12. Severability.** If, at any time, any provision hereof is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, the legality, validity or enforceability of the remaining provisions shall in no way be affected or impaired thereby. The invalid provision shall be replaced by a valid one which achieves to the extent possible the original purpose and commercial goal of the invalid provision.

**13. Indemnification.** CLIENT agrees to indemnify, defend and hold BEEFREE, its parents, affiliates, subsidiaries, principals, officers, and agents, harmless against any claims, suits, actions, or demands (including but not limited to any damages, reasonable attorneys' fees and costs) arising out of allegations that CLIENT's advertising content or the use of such advertising content in or in connection with the services provided hereunder infringe upon any intellectual property right of any third party. CLIENT also agrees to indemnify, defend, and hold BEEFREE, its parents, affiliates, subsidiaries, principals, officers, and agents, harmless against any claims, suits, actions, or demands (including but not limited to any damages, reasonable attorneys' fees and costs) based on damage caused to property or based on injury and/or death of persons, including for product liability, arising out of any unlawful, willful, negligent or reckless acts or omissions by CLIENT.

**14. Remedies and Waivers.** No failure to exercise, nor any delay in exercising, on the part of either party, any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy.

**15. Assignment.** This agreement shall not be assignable by either party, in whole or in part, without the written consent of the other party, which consent shall not be unreasonably withheld or denied.

**16. Construction and Interpretation.** The rule requiring construction or interpretation against the drafter is waived. This Agreement and all Addendums hereto shall be deemed as if they were drafted by both Parties in a mutual effort.

**17. Entire Agreement.** This Agreement and the Addendum(s) hereto form the entire agreement between the Parties relating to the subject matter hereof. Except as otherwise agreed in this Agreement, all amendments and modifications to this Agreement shall be made by a written document executed by both Parties.

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed by their duly authorized representatives, as of the date first above written.

**BEEFREE, LLC**

By: _DocuSigned by:_ _____
4C053BE74B22423...
(Signature)

**UNICOINS, INC.**

By: _DocuSigned by:_ _____
58D781B0A1D14E5...
(Signature)

Page 3 of 4

Seth Brown

_____
(Print Name)

Silvina Moschini

_____
(Print Name)

**EXHIBIT A**

**RATES AND SERVICES ADDENDUM**


This Rates and Services Addendum supplements the Master Services Agreement between BEEFREE, LLC ("BEEFREE") and Unicoins, Inc. ("CLIENT"), made and entered into on October 5th, 2023 (the "Agreement"). This Addendum is subordinate to, and fully incorporates the terms and conditions of the Agreement, unless expressly stated otherwise herein.


In consideration of the promises and covenants contained herein, and for good and valuable consideration, BEEFREE and CLIENT (collectively, the "Parties"), intending to be legally bound, hereby agree as follows:

1. **Term**. This Addendum shall commence on October 5th, 2023 ("Effective Date"), and shall remain in full force and effect until December 31st, 2023 unless terminated sooner pursuant to the terms of the Agreement.

2. **Services**. This Addendum is limited in scope to the following services (the "Services"), which BEEFREE shall provide to CLIENT at the rates specified herein (the "Rates"):

   a. Free transportation via "Freebee" vehicles for CLIENT's customers, potential customers, and the general public, for the purpose of spreading goodwill towards, and increasing recognition of, CLIENT's "Unicoin" brand, as well as its products and/or services, within the Miami community.
   b. Twenty-Seven (27) Full Vehicle Advertisement for three (3) months from the date of release of each vehicle to the market.(minimum of fifty
   (50) hours exposure weekly per vehicle, Customized Marketing Campaign, Driver Education)
   c. Vehicles/Markets to include:
      a. (3) Aventura
      b. (3) Downtown Miami
      c. (5) FIU
      d. (6) Key Biscayne
      e. (4) North Miami Beach
      f. (1) South Beach
      g. (2) Mid-Beach
      h. (1) West Miami
      i. (2) North Miami

3. **Rates.** In exchange for the Services listed above, CLIENT will pay BEEFREE at the following rates:

   a. An average rate of Four Thousand Five Hundred Dollars ($4,500.00) in Unicoins, using a conversion rate of market value at time of the payment ($0.50 per unicoin prior to exchange launch)  per vehicle per Unit for one (1) vehicle and for a three (3) Unit time period.
   b. The total cost of this campaign is Three Hundred Sixty-Four Thousand Five Hundred Dollars ($364,500.00)  in Unicoins, using a conversion rate of  market value at time of the payment ($0.50 per unicoin prior to exchange launch), plus the production costs of Seven Hundred and Fifty ($750), as a one-time fee per vehicle for printing and installation.


After the release the conversion rate differences between the market value and the 0.50 per unicoin will not be applied retroactively in any case and for any of the parties.

4.  **Payment Terms.** CLIENT agrees to pay BEEFREE in accordance with the following terms:

    a.   Client can pay BEEFREE in advance for this entire advertising period if the client requests. CLIENT shall pay BEEFREE in the following installments: A payment of Three Hundred Sixty-Four Thousand Five Hundred Dollars ($364,500) in Unicoins, using a conversion rate of market value at time of the payment ($0.50 per unicoin prior to exchange launch,  to be paid in Unicoins as stated in the MSA on a monthly basis, on or before the first calendar day of each month.

    b.   Client shall pay one-time Production cost of Twenty Thousand Two Hundred Fifty Dollars ($20,250) in Unicoins, using a conversion rate market value at time of the payment ($0.50 per unicoin prior to exchange launch),  at a rate of $750 per vehicle to be paid in Unicoins on or before October 9th, 2023.

After the release the conversion rate differences between the market value and the 0.50 per unicoin will not be applied retroactively in any case and for any of the parties.

**IN WITNESS WHEREOF,** the Parties have caused this Addendum to be executed by their duly authorized representatives.

BEEFREE, LLC

DocuSigned by:

4C053BE74B22423...

By: (Signature)

Seth Brown

Head of Marketing

UNICOIN INC.

DocuSigned by:

58D781B0A1D14E5...

By: (Signature)

Silvina Moschini

President